GLACIER REFRIGERATION SERVICE, INC. and Seymour Kaplan, Plaintiffs,

v.

AMERICAN TRANSPORTATION, INC. and Carol E. Biter, Defendants.

Rubert BITER, Individually and derivatively on behalf of Glacier Refrigeration Service, Inc., Defendant and Third-Party Plaintiff,

v.

DRIVER'S SERVICE, INC., Your Trucking Service, Inc., Marlene Kelley, Bernice Kaplan, and Benjamin Rosson, Third-Party Defendants.

No. 78 C 853.

United States District Court, E. D. New York.

April 3, 1979.

Harry Salvan, New York City, for plaintiffs.

Lichtenberg & Goss, New York City, for defendants by David J. Goss, Gary J. Levy, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action arises out of a joint business venture, which began with the incorporation of what became Glacier Refrigeration Service, Inc. ("Glacier") in Delaware and ended in bankruptcy proceedings in Connecticut. Plaintiff Seymour Kaplan ("Kaplan") is a New York resident who, with defendant Rubert Biter ("Biter"), a resident of Connecticut, formed Glacier to take advantage of what they perceived as an opportunity to perform truck carrier services for a corporation in the Midwest. Although most of the facts are in dispute, it is uncontested that Glacier was not a profitable enterprise and that defendant American Transportation, Inc. ("American"), a corporation in which Biter was also a principal, filed a petition as a creditor of Glacier seeking to place Glacier in involuntary bankruptcy. Glacier succeeded, in a manner now bitterly disputed, in obtaining dismissal of the petition and proceeded to commence this action on a number of grounds, sounding in malicious prosecution, libel, fraud and conversion.

Defendants in this action moved in the bankruptcy court to reopen the proceeding on the basis of an amended petition which corrected the deficiencies of the original petition. The bankruptcy court granted the motion, and the decision to reopen was af-

firmed on appeal to the United States District Court for the District of Connecticut. Thus, to date there has been no decision on the merits in the bankruptcy proceedings that form the basis for the malicious prosecution and libel counts in this action. Further attempt at coherent explication of the myriad facts involved in this litigation is doomed to failure and, in the view the court takes of the motions now before it, unnecessary to our decision.

■ Defendants move, having joined issue, for dismissal of the complaint on the ground of lack of personal jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56, F.R.Civ.P. They also seek a change of venue. Plaintiffs moved for partial summary judgment on the malicious prosecution and libel counts and seek to have the answer stricken and the counterclaims dismissed. Plaintiffs' counsel also seeks dismissal of a third-party complaint on behalf of the third-party defendants. Since it is the court's view that personal jurisdiction is plainly lacking and that dismissal of the complaint on this ground is appropriate under Rule 12(c), (d), F.R. Civ.P., the court need not address the other arguments raised in defendants' brief. Plaintiffs' motion for partial summary judgment is frivolous and warrants no comment other than by noting that plaintiffs' papers, consisting primarily of rambling affidavits, are so incoherent that they almost defy serious consideration by the court. Finally, since the court holds that *in personam* jurisdiction does not exist for purposes of the complaint, the court cannot logically have *in personam* jurisdiction over the defendants for purposes of their counterclaims and third-party complaint. Thus, the counterclaims and third-party complaints are dismissed for want of personal jurisdiction. See *Dragor Shipping Corporation v. Union Tank Car Company*, 378 F.2d 241 (9 Cir. 1967). See also Rule 14(a), F.R. Civ.P. The reasons for the court's decision follow.

Jurisdiction in this action is premised on diversity of citizenship. 28 U.S.C. § 1332. Defendant American is alleged to be incorporated under the laws of Connecticut, having its principal place of business in the

State of Connecticut. The individual defendants Rubert and Carol Biter are alleged to be residents of Connecticut. Service on all defendants was made on them at an address in Woodbridge, Connecticut. Thus, under Rules 4(d)(7) and (e) of the Federal Rules of Civil Procedure, the validity of personal service of the summons and hence *in personam* jurisdiction must be tested by reference to the law of the State in which the district court sits.

■ The applicable sections of the New York Civil Practice Laws and Rules ("CPLR") are 301 and 302. Under Section 301, courts sitting in New York possess power to subject foreign parties to personal jurisdiction if they are "doing business" in New York. Thus, for causes of action which may not be related to business actually conducted in New York, jurisdiction over the person is only acquired if that person is doing business in New York in the traditional sense, that is, "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917).

■ While a party's presence in the State under this section is a question to be determined on the facts of each case, see, e. g., *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1242 (S.D.N.Y.1977); *Rainbow Indus. Products v. Haybuster Mfg., Inc.*, 419 F.Supp. 543, 544 (E.D.N.Y.1976) (Section 302), resolution of this issue is considerably simplified here by the complete absence of allegations sufficient to raise even a colorable claim that defendants were doing business within the State.[1] Since the burden of proving jurisdiction is on the party asserting it, *Boser v. Burdick*, 62 A.D.2d 1134, 404 N.Y.S.2d 187, 188 (App. Div. 4th Dept. 1978), it is a simple matter to conclude that plaintiffs have failed to meet their burden. Defendants, moreover, have established by affidavit that American is a Connecticut corporation having neither place of business in New York, nor license to do business in the State (Affidavit of David J. Goss, Esq., ¶ 3). They state that American is engaged in the interstate delivery of small packages in certain States, including New York on an occasional basis (Affidavit of Rubert Biter, ¶ 4), but assert that "even during such trips, no business was ever conducted or transacted. American's trucks deliver only the products of others, making no business contacts for the corporation with customers in New York. The ICC does not authorize American to do substantial business on any New York route." (Memorandum of law at 29.)

---

1. After a laborious review of plaintiffs' papers, the only allegations that bear on the issue of personal jurisdiction are found in an affidavit of Seymour Kaplan dated August 21, 1978 at page 2. There he states that:

   "[t]he minutes of the corporation were made in New York at my attorney's office at 501 Fifth Avenue, New York, N. Y. The stock was issued and signed in New York at my attorney's office and the courts are not for the convenience of the defendants. Courts were organized to give protection to residents of this district, where wrongs may have been committed in another place based on diversity and amount.

   "American does business in New York and the defendants, having submitted themselves to the jurisdiction of the Court by conduct and papers and time and court concern, cannot demand a transfer which would serve no useful purpose at this posture of the case with the volume of papers. This would give the defendants the time to straddle a delay and procrastinate. The weight of the papers would need a truck."

   The statement warrants only brief comment, apart from noting that it demonstrates a general misapprehension of applicable law. First, the fact that the corporation's attorney's office is in New York, if such was the case, has no bearing on whether defendants were doing business in New York. Even if the "minutes of the corporation were made in New York" and "the stock was issued and signed in New York," the allegations—whatever they mean—are still insufficient to subject defendants to personal jurisdiction. See *Wahl v. Vicana Sugar Co.*, 144 N.Y.S.2d 613 (Sup.Ct.N.Y.County 1955), *aff'd*, 2 A.D.2d 848, 156 N.Y.S.2d 993 (App.Div. 1st Dept. 1956). Second, plaintiffs' conclusory allegation that American does business in New York is completely unsupported and is, in fact, rebutted by defendants' affidavits. In these circumstances, such an allegation is not particularly weighty in view of the burden plaintiffs bear in proving that defendants were doing business in the State.

These allegations are not disputed and demonstrate that defendants are not doing business within the State sufficient to subject them to personal jurisdiction under CPLR § 301. See, *e. g., Potter's Photographic Applications Co. v. Ealing Corp.*, 292 F.Supp. 92 (E.D.N.Y.1968) (shipment of goods into State pursuant to orders of New York customers insufficient under Section 301); *Hastings v. Piper Aircraft Corp.*, 274 A.D. 435, 84 N.Y.S.2d 580 (App.Div. 1st Dept. 1948).

■ Finally, there is absolutely no evidence that any of the negotiations that led to the agreement to form what eventually became Glacier took place in New York; most of these negotiations apparently occurred either telephonically, or in New Jersey or in Washington. There are no contacts which might provide a basis for assertion of personal jurisdiction over defendants. See, *e. g., Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374 (S.D.N.Y. 1975) (section 302); *Sayles Biltmore Bleacheries, Inc. v. Soft-Fab Textile Processors, Inc.*, 440 F.Supp. 1010 (S.D.N.Y.1977).

Although the proposition is not forwarded, there is even less support for an argument that the individual defendants were "doing business" in New York sufficient to subject them to personal jurisdiction under Section 301. Rubert and Carol Biter were not engaged "pervasively, unmistakably, undeniably, continuously, and substantially" in doing business in the State. *Cf. ABKCO Industries, Inc. v. Lennon*, 85 Misc.2d 465, 377 N.Y.S.2d 362, 366 (Sup.Ct.Spec.Term N.Y.County 1975), *aff'd*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (App.Div. 1st Dept. 1976).

Turning now to the other possible basis for assertion of "long-arm" jurisdiction, we note that section 302 contains a significant limitation not found in section 301. It provides that:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state; or

"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . ."

The cause of action thus must arise from one of the enumerated acts. See *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357–58 (2 Cir. 1970).

For the reasons stated above, the court is of opinion that paragraphs one and two of section 302 are inapplicable. The record reveals that defendants neither transacted business within the State within the established meaning of the phrase, nor committed a tortious act within the State. See, *e. g., McShan v. Omega Louis Brandt et Frere, S. A.*, 536 F.2d 516 (2 Cir. 1976); *Lynn v. Cohen*, 359 F.Supp. 565 (S.D.N.Y. 1973). There is, moreover, no indication that plaintiffs' asserted causes of action arise from any business conceivably transacted in the State. See *Fontanetta v. American Board of Internal Medicine, supra* at 357–58. Defendants have performed no purposeful acts in New York in relation to the causes of action which indicate that they have availed themselves of the privilege of conducting business activities in the State, thereby invoking the benefit and protection of New York law. See *Chemical Bank v. World Hockey Ass'n, supra* at 1378.

■ Thus, if jurisdiction is to be sustained at all, it must be predicated on CPLR § 302(a)(3), which provides for causes of action arising out of a tortious act committed without the State causing injury to

person or property within the State. Assuming for present purposes that defendants have satisfied the additional statutory requirements of subsections (a)(3)(i) or (ii), and that the tortious conduct, if any, occurred outside New York, the paragraph is nonetheless "not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 94 (2 Cir. 1975); *Corke v. Sameiet M. S. Song of Norway,* 435 F.Supp. 308 (W.D.N.Y.1977). As in most commercial tort cases, the place of injury—"where the critical events associated with the dispute took place," *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2 Cir. 1971) —is either in Connecticut, New Jersey or Washington, D. C., if at all. Section 302(a)(3) is therefore inapplicable. See *G. S. C. Associates, Inc. v. Rogers,* 430 F.Supp. 148 (E.D.N.Y.1977).

Accordingly, defendants' motion to dismiss the complaint for lack of personal jurisdiction is granted, and thus the complaint, the counterclaims and third-party complaint are hereby dismissed.

SO ORDERED.